IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

RUTHA CARROLL AND
HERMAN CARROLL, SR.,
INDIVIDUALLY AND AS HEIRS
OF HERMAN ROCHAN CARROLL
also known as HERMAN ROCHAN
BARNES; CHASTITY RODGERS,
ON BEHALF OF THE ESTATE
OF HERMAN ROCHAN BARNES,
AND TAMEISHA JONES, AS
NEXT FRIEND OF JADA KNOX
AND MAYA BARNES, MINOR
CHILDREN OF HERMAN ROCHAN
BARNES, DECEASED,
     PLAINTIFFS,

V.         NO._____

HARRIS COUNTY, TEXAS, and
HARRIS COUNTY SHERIFF TOMMY
THOMAS, HARRIS COUNTY
SHERIFF'S DEPUTIES, ANDY
VIRUETTE, JR., JUAN CELESTIAL,
NICHOLAS CARTER, GEORGE
W. ELLINGTON, REX EVANS,
KEVIN SIMS, GREGG BOARD,  and
ANDY HULSEY, IN THEIR
INDIVIDUAL AND OFFICIAL
CAPACITIES, HETTIG/KAHN
 HOLDINGS INC., AND
TASER INTERNATIONAL, INC.,
     DEFENDANTS.

**PLAINTIFFS', RUTHA CARROLL AND HERMAN CARROLL, SR.,
INDIVIDUALLY AND AS HEIRS OF HERMAN ROCHAN CARROLL, ALSO
KNOWN AS HERMAN ROCHAN BARNES; CHASTITY RODGERS ON BEHALF
OF THE ESTATE OF HERMAN ROCHAN BARNES, AND TAMEISHA JONES,
AS NEXT OF FRIEND OF JADA KNOX AND MAYA BARNES, MINOR
CHILDREN OF HERMAN ROCHAN BARNES', ORIGINAL COMPLAINT**

Plaintiffs file this original complaint complaining with respect to the death of Herman Barnes. This lawsuit is brought by Rutha Carroll and Herman Carroll, Sr., Individually and as heirs of Herman Rochan Carroll also known as Herman Rochan Barnes (hereinafter referred to as "Herman Barnes") Chastity Rodgers, on behalf of the estate of Herman Rochan Carroll also known as Herman Rochan Barnes and Tameisha Jones, as next of friend for Jada Knox and Maya Barnes, minor children of Herman Rochan Barnes, Deceased, against Harris County, Texas, Andy Viruette, Jr., Juan Celestial, Nicholas Carter, G.W. Ellington, Rex Evans, Kevin Sims, Gregg Board, Andy Hulsey, individually and in their official capacity; Hettig/Kahn Holdings, Inc., and Taser International, Inc., the manufacturer of the product that is also the subject of this suit.

Plaintiffs would show unto the court as follows:

<u>JURISDICTION</u>

1. Jurisdiction vests under 28 U.S.C. § 1331 (federal question), 42 U. S. C. §§ 1983 and 1988, and 28 U. S. C. § 1367 (supplemental jurisdiction for state common law claims).

2. The incident that forms the basis of this lawsuit occurred in Harris County, Texas.

<u>PARTIES</u>

3.    Plaintiff, Rutha Carroll, at all times material to this action, is and remains a resident of Harris County, Texas, and is the mother of Herman Barnes, hereinafter and sometimes referred to as "Barnes".

4.    Plaintiff, Herman Carroll, Sr., at all times material to this action, is a resident of the State of California and is the father of Herman Barnes.

5.    Plaintiff brings suit as the next friend of Jada Knox and Maya Barnes, minor children of the decedent, Herman Barnes.  At all times material to this action, Plaintiff Jones is and remains a resident of the State of Texas.

6.    Chastity Rodgers brings suit on behalf of the Estate of Herman Barnes

7.    Defendant, Harris County, Texas, is a governmental entity as that term is defined under Texas law.

8.    Defendant, Andy Viruette, Jr., at all times material to this action, is and remains a Deputy Sheriff for Harris County, Texas.  Defendant is sued in his individual and official capacity, and may be served with at 1200 Baker Street, Houston, Texas 77002.

9.    Defendant, Juan Celestial, at all times material to this action, is and remains a Deputy Sheriff for Harris County, Texas.    Defendant is sued in his individual and official capacity, and may be served with process at 1200 Baker Street, Houston, Texas 77002.

10.  Defendant, Rex Evans, at all times material to this action, is and remains a Deputy Sheriff for Harris County, Texas.    Defendant is sued in his individual and official capacity, and may be served with process by at 1200 Baker Street, Houston, Texas 77002.

11.  Defendant, Nicholas Carter, at all times material to this action, is and remains a Deputy Sheriff for Harris County, Texas.    Defendant is sued in his individual and official capacity, and may be served with process at 1200 Baker Street, Houston, Texas 77002.

12.  Defendant, Kevin Sims, at all times material to this action, is and remains a Deputy Sheriff for Harris County, Texas.    Defendant is sued in his individual and official capacity, and may be served with process at 1200 Baker Street, Houston, Texas 77002.

13.  Defendant, G. W. Ellington, at all times material to this action, is and remains a Deputy Sheriff for Harris County, Texas.    Defendant is sued in his individual and

4

official capacity, and may be served with process by serving him a 1200 Baker Street, Houston, Texas 77002.

14.   Defendant, Taser International, Inc., is a Texas corporation and the manufacturer of the product (Taser), and has conducted business in the State of Texas and placed the offending product in commerce.

15.   Defendant Tommy Thomas, is sued individually and in his official capacity as the Harris County Sheriff, and may be served with process at 1200 Baker Street, Houston, Texas 77002.

16.   There are unknown Defendant officers that participated in the unlawful attack on Barnes.   These "Bivens" officers once known will be supplemented and added as Defendants herein in their individual and official capacities.

17.   Defendant Gregg Board is sued individually and in his official capacity as a Harris County Deputy Constable, Precinct 3.   Defendant may be served with process at 701 Baker Road, Baytown, Texas 77521.

18.   Defendant Andy Hulsey, at all times material to this action, is and remains a Deputy Sheriff for Harris County, Texas.   Defendant is sued in his individual and official capacity, and may be served with process at 1200 Baker Street, Houston, Texas 77002.

## FACTUAL STATEMENT

19.  On October 6, 2006, Herman Barnes was declared dead by the Harris County Medical Examiner's Office.  The manner of death was designated as "homicide."  The Medical Examiner's Report is dated April 13, 2007, some six (6) months after Barnes' death.

20.  The autopsy reflects several aggregated abrasions to the upper right forehead, including a 3/8 by 1/3 inch red-brown abrasion, a ½ by 3/8 inch red-brown abrasion, a 3/16 by 1/8 inch pink-red abrasion (with avulsions of the skin), a ¼ by ¼ inch pink-red abrasion (with partial avulsion of the skin), as well as several curvilinear, 1/8 by ¼ inch red-brown abrasions; the aggregated abrasions extend over a 2 ½ by 1 inch area.  In addition, injuries were reflected on the bridge of the nose and the right side of the nose.  There was injury to the right masseteric region of the face which had several aggregated red-brown abrasions and superficial lacerations; the neck had nearly adjacent puncture wounds or superficial lacerations; puncture wound on the right mid-chest to the left of the right nipple; 3/8 by 3/8 inch red-brown abrasion and a 3/8 by 1 inch red-brown abrasion on the posterior upper right shoulder, medial back and medial left mid-back.  Additional

injuries to Barnes' tongue and upper right buttock are noted.

21. Defendant officers and other unknown officers entered into the home of Barnes without a warrant, without probable cause, and administered an unwarranted beating to Barnes. The beating was accompanied by shouts from Barnes for the officers to leave his home, pleas for the officers to cease their acts, and pleas for help.

22. Defendant officers beat and tasered Barnes repeatedly. The officers tasered Barnes more than thirty times, as follows: Viruette seven (7) times; Evans two (2) times; Ellington twenty three (23) times.

23. Harris County records indicate that Barnes received the Taser shocks for about 123 seconds at the hands of these Defendant officers.

24. There is no record of Barnes committing any crime.

25. Prior to the officers entering the home, Barnes was standing in his driveway talking on the telephone. A unit driven by Defendant Andy Viruette passed up the street, turned around and came back. Defendant then parked the police unit between Barnes' house and the house next door to the right. When Defendant came back to the Barnes'

house, he said something to Barnes and Barnes moved into his home.

26.   Defendant entered the Barnes' home without a warrant and without probable cause.  This act was the beginning of a series of acts by the Harris County Sheriff deputies that caused the death of Barnes.

27   Barnes was heard saying at least three (3) times, "Sir, please get out of my house."

28.   Instead of leaving, Viruette, according to records of Harris County, ordered Barnes who had sat down in a chair, to get up.  At some point, Viruette hit Barnes with his nightstick and deployed his Taser stun gun, shocking Barnes with volts of electricity.  Sounds of a struggle were heard by witnesses as another Defendant officer, Juan Celestial, arrived on the scene.  Defendant Sims drove up around the same time and they entered Barnes' residence.

29.   Defendant Celestial struck Barnes at least five (5) times with his nightstick on his arms, elbow, legs and back.  Defendant Sims kicked and choked Barnes.  Viruette tasered Barnes again and again.

30.   Around this time, other Defendant officers arrived, including Defendants Evans and Ellington. Defendant Ellington entered the room first and while

Defendants Viruette, Sims and Celestial had Barnes pinned on the ground.  Ellington approached the group and "drive stunned" Barnes directly in the neck, sending electrical currents to that area.  Defendant Evans deployed his Taser stun gun, striking Barnes in the chest.  Ellington then deployed the Taser again, causing the probes to strike Barnes in the chest.  Barnes stiffened and fell backwards, shattering a glass kitchen table.  Defendant Evans deployed his Taser again and Defendant Ellington tasered Barnes repeatedly, a reported twenty-three (23) times, in deliberate indifference to Barnes constitutionally protected rights.

31.  One of the witnesses to the events, Melba Jean Lee, explained that she saw five (5) units arrive at the house at one time.  The witness explained that she could hear glass breaking and one officer came out of the house shaking his hand and uttering profanities.  Another Hispanic officer came out of the house and the witness asked whether the man was alive.  The unidentified Hispanic officer explained that he was alive and "that is what happens when you are on PCP."  When family members came upon the scene, they were told to move away and cursed at by the officers.

32.   Another   witness,   Alton   Johnson,   identified seventeen (17) officers at the scene.   Mr. Johnson heard glass breaking and heard Barnes moaning and groaning.

33.   The autopsy reveals that Barnes was also Tasered multiple times and suffered puncture wounds to his chest, neck,   left   flank,   and   upper   extremities.    The   autopsy report labeled these injuries as "history of 'Taser' probe applications."

34.   There was no alcohol, cocaine, benzodiazepines, barbiturates,   phencyclidine,   amphetamines/methamphetamine, opiates or methadone detected in the blood of Barnes.

35.   Barnes has a history of mental illness.   The medical   examiners   explained   that   the   multiple   Taser application was connected to the exacerbation of Barnes' psychosis leading to a state of delirium.   The examiners report provides, "[t]he mechanism of death in this case is likely related to automatic stimulation during this death; the   actions   of   others,   regardless   of   intent,   clearly exacerbated the psychotic delirium.   Therefore, but for the actions of others, it is unlikely this man would have died at the time he did.   The manner of death will be listed as homicide."

36.   According   to   the   records   of   Channelview   EMS, upon their arrival at the scene at about 4:03 p.m., they

found Defendant Harris County Sheriff and Precinct 3 officers there and asked them where the patient was. The Defendant officer said that there were two (2) deputies with hand injuries in need of care. The EMS began to treat two (2) officers who had injured their hands and had gone outside. After four (4) or five (5) minutes of tending to the officers' hands, one EMS asked "…who had done this to the deputies." They informed him that the responsible party was inside the residence. EMS Elkins then went inside the residence and found Barnes on the floor and restrained by handcuffs. Barnes was not able to ambulate and was unconscious.

37. According to Defendant officers, Barnes was non-responsive. He was having trouble breathing had convulsed and defecated on himself. The Defendant officers were deliberately indifferent to Barnes' obvious and serious medical needs in violation of the Eighth Amendment to the United States Constitution's ban on cruel and unusual punishment.

38. The probable cause of Barnes' physical and mental condition was listed as "trauma major." EMS personnel noted that attempts were made to intubate the patient in the house several times, but such attempts were unsuccessful. Attempts were also made in the EMS unit.

11

These attempts were also unsuccessful.  The EMS personnel had to ask the Defendant officers to take the handcuffs off so that they could try to help Barnes.

39. Based on records from Jacinto City EMS, they arrived at the scene at 16:14 and attempted to intubate Barnes but were unsuccessful.  Then, at 16:20 and again at 16:25, they attempted but were unable to find a pulse, blood pressure, or respiration.  Some twenty (20) plus minutes after they arrived, at the time of transport (16:37), Barnes had no pulse, no blood pressure, no respiration, was unconscious, non-responsive and in cardiac arrest.

40. At 17:03, almost an hour after the Channelview EMS began assistance, Barnes was admitted to Lyndon Baines Johnson Hospital.  Barnes was officially pronounced dead at the hospital at 17:06.  The hospital death notice listed the cause of death as "cardiac arrest."

<u>HARRIS COUNTY</u>

41. Still relying on all of the facts as set forth above, Harris County is liable for the following reasons:

A. Excessive force in violation of the Fourth
   Amendment to the United States Constitution.

B. Failure to properly train its officers in the use
   of the "Taser," particularly as related to the

12

mentally ill. Failure to have in place constitutionally appropriate policies and procedures regarding the Taser and the use of Tasers. Failure to update and otherwise modify policies regarding the Taser as new information concerning the risks become known.

C. Failure to properly discipline, supervise and failure to dismiss violent officers. Harris County maintained a widespread and persistent practice of failure to properly discipline and supervise dangerous deputies, and allowed dangerous officers to remain on the force. Both Celestial and Viruette have a history of malfeasance in their work performance, to-wit:

  i)   On June 16, 2006, Viruette was suspended for a period of ten (10) days for neglecting his duties, untruthful conduct, engaging in an arrogant manner toward other employees of the Sheriff's Department.

  ii)  On October 9, 1999, Celestial was involved in an incident in which he used vulgar, threatening, and insulting language. In addition, Celestial assaulted and threatened

to shoot a Mr. Donald Bolen. Celestial proceeded to his estranged wife's residence and entered her apartment without permission. After entering the apartment, Celestial threatened to shoot Mr. Bolen (her boyfriend). At some point, Mr. Bolen fell to the floor and while he was down, Celestial began kicking him. Celestial was arrested for the offense of aggravated assault of a family member, aggravated assault with a deadly weapon and burglary with intent to commit a felony.

iii) Celestial was terminated for his conduct; the termination was later reversed and reduced to a temporary suspension without pay; he was placed on probation for six (6) months, with a requirement that he participate in an anger management counseling program.

D.  Deliberate indifference to Barnes' obvious and serious medical needs, and subjecting Barnes to cruel and unusual punishment in failing to inform EMS that Barnes was inside the residence and was non-responsive, having trouble breathing, had

14

convulsed and defecated on himself, and was seriously in need of medical attention, all in violation of the Fourth Amendment to the Constitution of the United States of America. Further, Defendants were deliberately indifferent to Barnes' constitutional rights, as a citizen, to fair treatment. Defendants deprived Barnes of his life and liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

E.   False Arrest and detention without probable cause.  Barnes had broken no law but was detained and arrested in violation of his constitutionally protected rights.

F.   Illegal Search and Seizure.  Despite the fact that there was neither consent, reasonable suspicion nor probable cause that Barnes had committed any crime, Defendant officers entered into Barnes' residence, which violated the Fourth Amendment to the Constitution of the United States of America and the laws of the State of Texas.

G.   Denial of Medical Attention.  Defendant officers

knew of the injuries they had inflicted on Barnes, yet they sought and received medical attention for minor hand injuries from the EMS first, while ignoring Barnes' obvious need for medical care.     Further, Defendant officers located inside Barnes' residence kept Barnes handcuffed and hobbled and did not attempt to aid Barnes themselves or seek medical attention from EMS for him when he was clearly in serious need of medical attention.

H.   Failure to properly train officers in recognizing and responding to mentally ill citizens.

I.   Defendant Harris County Sheriff Tommy Thomas is the final policymaker for Defendant Harris County and he had actual or constructive knowledge of the Taser policies or customs, or persistent widespread practices which where the moving force behind the violation of Barnes' constitutional rights.

J.   Defendant Harris County Sheriff Tommy Thomas is the final policymaker for Defendant Harris County and he had actual or constructive knowledge of the widespread illegal search and seizure, excessive use of force and false arrest and

detention practices of his officers which where the moving force behind the violation of Barnes' constitutional rights.

INDIVIDUAL OFFICERS

42.  Excessive Force Claim.  The individual officers are liable in context of the injuries in question because the officers directed unreasonable and unnecessary force at Barnes when there was no probable cause and/or reason to exercise such force with respect to the Barnes.  Barnes had committed no crime, requested that officers leave his home. Instead of leaving his home, the Defendant officers beat Barnes with fists, night sticks and batons, kicked him, tasered him over thirty (30) times then handcuffed and hobbled him.

43.  Failure of officers to stop the use of excessive force.  Defendant officers subjected Barnes to unlawful force and/or they failed to stop the illegal use of force by their fellow officers and remained silent.

44.  Illegal detention.  The officers entered into the home of the decedent without probable cause.  The officers then proceeded to illegally detain, seize and administer excessive force against Barnes.  Despite the fact that there was no reasonable suspicion nor probable cause that Barnes had committed any crime, Defendant officers arrested

and detained him using excessive force and extreme brutality that shocks the conscience of the ordinary citizen.

45. <u>Illegal Search and Seizure</u>. Despite the fact that there was neither consent, warrant, reasonable suspicion, nor probable cause that Barnes had committed any crime, Defendant officers entered into Barnes' residence in violation of the Fourth Amendment to the Constitution of the United States of America and the laws of the State of Texas.

46. <u>Deliberate indifference</u>. Defendant officers and EMS knew that Barnes was non-responsive and had no pulse for more than fifteen (15) minutes before he was removed from the residence. Instead of Defendants' notifying and waiting for the coroner, Barnes was removed from this crime scene by Jacinto City EMS and EMS Elkins and transported to LBJ instead of the nearest East Regional Hospital. Several witnesses stated that Barnes appeared dead when removed from the house to the ambulance. The ambulance did not leave immediately and left the scene without turning on the siren. The Defendant officers and EMS personnel acted in concert to cover up their actions leading to the death of Herman Rochan Barnes, in violation of Barnes' constitutionally protected rights.

18

PENDENT STATE LAW CLAIMS

47.   The individual officers are liable in context of the injuries in question because under the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE Section 101.021, Defendant officers in the course and scope of their duties improperly or negligently used tangible personal property (Taser) and caused an injury or death.

TASER INTERNATIONAL, INC.

48.  Taser International, Inc., is the manufacturer of the subject product, to-wit:  Taser X26 System.  Defendant noted as distributor/manufacture/seller herein should be held liable in this matter in light of the Defendant corporation placing in commerce a product that failed in its intended purpose, to-wit: advertised as a "less-lethal weapon."  It should be noted that Defendant's advertisement is contradictory in nature.  Defendant advertises the product as "less-lethal" but places in the marketplace a product that has no instructions as to at what point the product can cause death.  The advertisement of Defendant and the industry in general lulls officers into a false sense of safety and causes the multiple and repeated use of the product.

49  The product fails to function properly in context of how the object is marketed.  The repeated use of the

19

product is no different than the use of a gun; in fact, it is probably more dangerous because the product is unreasonably dangerous in context of its intended use. Defendant corporation should be held liable.

<u>PRAYER FOR DAMAGES</u>

50.  Plaintiff, Tameisha Jones, as Next of Friend for Jada Knox and Maya Barnes, sues for the minor children in the following respects., to-wit:

A.  Pecuniary loss, including maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that their father would have contributed if he had lived;

$500,000.00

B.  Loss of companionship and society, including the positive benefits flowing from the love, comfort, companionship and society that the children in reasonable probability would have received from their father had he lived:

$1,000,000.00

C.  Mental anguish, including the emotional pain, torment, and suffering experienced by the minor children because of the death of their father:

$1,000,000.00

20

51.   Rutha Carroll and Herman Carroll, sue for the following, to-wit:

A.   Loss of companionship and society, including the positive benefits flowing from the love, comfort, companionship and society that the parent in reasonable probability would have received from their son had he lived:

$1,000,000.00

B.   Mental anguish, including the emotional pain, torment, and suffering experienced by the parent because of the death of their son:

$1,000,000.00

53.   The Estate of Herman Barnes sues for the conscious pain and suffering experienced by Barnes prior to his death:

$1,000,000.00

The Estate of Herman Barnes sues for funeral and medical bills incurred with respect to Herman Barnes' death:

$10,000.00

54.   Plaintiffs sue for pre-judgment and post-judgment interest.

Plaintiffs sue for reasonable and necessary attorneys fees herein and cost of court.

Plaintiffs sue for all matters in equity and in law to which Plaintiffs would be entitled.

Plaintiffs sue for exemplary damages for the acts of the individual officers.

Plaintiffs sue for damages in the past, present and future.

DATE:  October 6, 2008.

Respectfully submitted,

/S/ ANTHONY P. GRIFFIN

_____
ANTHONY P. GRIFFIN
ATTORNEY-IN-CHARGE
A. GRIFFIN LAWYERS
1115 MOODY
GALVESTON, TEXAS 77550
409.763.0386
1.800.750.5034
FACSIMILE NO. 409.763.4102

STATE BAR NO.  08455300
FEDERAL I. D. NO. 3746
Email:
agriffin@agriffinlawyers.com

ERMA J. CAREY-BAY
ATTORNEY AT LAW
4201 FM 1960 WEST, SUITE 455
HOUSTON, TEXAS 77068
713.521.2137
FACSIMILE NO.  281.440.1105
STATE BAR NO. 03791900
FEDERAL I.D. NO. 1766
Email:
ecareylaw@aol.com

ATTORNEYS FOR PLAINTIFF

c:word.barnes.herman.original_complaint[final]