# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| RUTHA CARROLL, *et al.,* | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-08-2970 |
| | § | |
| HARRIS COUNTY, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Pending before the court is defendants' renewed motion to exclude the testimony of plaintiffs' experts Dr. Joye Carter and Dr. Rahn Bailey. Dkt. 108. After considering the motion, the response, the reply, the parties' arguments, the appropriate evidence, and the applicable law, the motion is GRANTED IN PART AND DENIED IN PART as set forth in more detail below.

## I. BACKGROUND

Herman Barnes (also known as Herman Carroll) died after an altercation with police on October 6, 2006. Barnes was outside his home when observed by Harris County Deputy Andy Viruette, Jr., who turned his car around and asked Barnes some questions. Dkt. 103 at 2-6. Barnes turned away and went into what turned out to be his house, Viruette followed him—Barnes told Viruette to leave, and Viruette ordered Barnes onto the floor. *Id.* Viruette used his TASER which did not properly deploy. Barnes started screaming, went to the kitchen, and began emptying his pockets—Viruette used force including his TASER and numerous kicks to Barnes' legs to try and get him to the floor. Five other deputies responded to Viruette's call for assistance, and each testified that Barnes was flailing his arms about and refusing to comply with their orders to get down. *Id.* More than 30 TASER firings later, and after attempting various means of physically forcing

Barnes to comply with police orders, Barnes finally fell backwards through a glass table.  He tried

to get up and was TASERed one more time, and finally went limp.  Officers handcuffed and hobbled

Barnes.  *Id*.  At some point during the struggle, Barnes defecated on himself and began convulsing

as if he were undergoing a seizure.  Two EMS teams arrived shortly after 4 a.m. and found Barnes

on the floor, restrained, unconscious and in cardiac arrest.  *Id*.

An autopsy revealed that Barnes sustained multiple bruises, puncture wounds and superficial

lacerations.  Dkt. 103 at 7.  The medical examiner found that Barnes had a history of paranoid

schizophrenia, and that this, along with the reports of Barnes exhibiting superhuman strength,

"indicate an exacerbation of psychosis" to which the actions of the officers contributed.  *Id*.  The

cause of death was listed as "sudden death during schizophrenic psychotic delirium following

physical restraint," but was later amended to indicate that death was the result of an "exacerbation

of psychosis during physical restraint."  *Id*.

Summary judgment has narrowed this case to the following: (1) claims against Deputy

Viruette for false arrest and excessive force, (2) claims against assisting officers Deputies Evans,

Ellington, Celestial, Carter, and Hulsey for excessive force, and (3) a claims against Deputy Sims

(who did not employ force against Barnes) for failure to intervene in the other defendants' alleged

use of excessive force.

Plaintiffs have identified two experts in this case, Dr. Joye Carter and Dr. Rahn Bailey.

Defendants move to exclude their opinion testimony. Dkt. 108.  Plaintiffs responded, and defendants

filed a reply.  Dkts. 112, 113.  A hearing was held on October 25, 2011, at which Dr. Bailey testified.

Plaintiffs did not present testimony concerning Dr. Carter's opinion, but instead relied upon her

report and deposition testimony in opposing the motion.  The motion is now ripe for disposition.

## II. Analysis

*1. Admissibility of Expert Testimony*

In cases where federal subject matter jurisdiction is based on diversity, state law governs substantive matters while federal law governs procedure. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817 (1938); *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 395 (5th Cir. 2003). Admissibility of evidence is a procedural matter. *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1182 n.7 (5th Cir. 1975). The admissibility of expert testimony is therefore governed by the Federal Rules of Evidence. Fed. R. Evid. 702; *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

The Supreme Court of the United States acknowledged in *Daubert v. Merrell Dow Pharmaceuticals* that Federal Rule of Evidence 702 serves as the proper standard for determining the admissibility of expert testimony. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597–98, 113 S. Ct. 2786 (1993). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Under *Daubert*, a trial court acts as "gatekeeper," making a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93; *Kumho Tire v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (5th Cir. 2002). *Daubert* and its principles apply to both scientific and non-scientific expert testimony. *Kumho Tire*, 526 U.S. at 147. Experts

need not be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than admissibility. *Huss*, 571 F.3d at 452. Nonetheless, courts need not admit testimony that is based purely on the *ipse dixit* of the expert. *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997); *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 276 (5th Cir. 1998).

In addition to being qualified, an expert's methodology for developing the basis of his or her opinion must be reliable. *Daubert*, 509 U.S. at 592–93; *Moore*, 151 F.3d at 276. Even if the expert is qualified and the basis of her opinion reliable, the underlying methodology must have also been correctly applied to the case's particular facts in order for her testimony to be relevant. *Daubert*, 509 U.S. at 593; *Knight v. Kirby Inland Marine Inc*., 482 F.3d 347, 352 (5th Cir. 2007). The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. See Fed. R. Evid. 104(a); *Moore*, 151 F.3d at 276. The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and that the testimony is relevant and reliable. *Moore*, 151 F.3d at 276.

*2. Dr. Joye Carter*

Dr. Carter is a board-certified pathologist with extensive experience, including as Chief Medical Examiner of Harris County, Texas for a period of time. Dr. Carter recounts the police officers' report of events, and notes the physical findings from the autopsy and the medical examiner's reported cause of death—"sudden death during schizophrenic psychotic delirium following physical restraint." Dkt. 108-1 at 2-3. Dr. Carter offers the following opinions:

> 1.      This was a preventable death. This opinion is made based upon the officer's account of what transpired. An assumption was made about Mr. Barnes being suspicious with no evidence of wrong doing prior to entering the home.

2.     This death was due to excessive force by law enforcement officers.  While this reviewer is in agreement with the manner of death the cause of death listed is utter nonsense.  This man was not acting in a manner that suggested that he was a threat to himself or his neighbors when he was questioned by the officer initially.  The wastebasket term of schizophrenic psychotic delirium following physical restraint is ridiculous.  Mr. Barnes died after multiple applications of a Taser device, multiple impacts from blunt objects and physical ligature and restraints.

3.     Mr. Barnes did not receive timely medical care.  After he was observed to have seizure activity the medical assistance was delayed while EMS responders tended to two officers with minor injuries.  Several minutes elapsed while the officers were treated with missed opportunity to provide circulatory support to Mr. Barnes.  To make matters worse, Mr. Barnes had documented signs of cardio-respiratory failure and was still in handcuffs while being administered oxygen and chest compressions.

4.     The law enforcement agency should not have had access to Mr. Barnes body after his death was pronounced.  There should have been no examination conducted of his body which includes photographs without the presence of the medical examiner staff.

5.     There are cultural differences that must be considered in deaths like this one.  Minority men have been over represented in the category of policy custody deaths by comparison to the population statistics.  Black men by proportion are killed more often in police custody cases than white men.  The theory of self preservation and flight or fight must also be taken into consideration.  A person perceiving death may display or appear to exhibit extraordinary strength without being proclaimed to have a psychotic event.  This reviewer suggests that an experienced psychiatrist review this case report.

Dkt. 108-1 at 3-4.

Defendants assert several challenges to various portions of Dr. Carter's opinions.  They will

be addressed *seriatim*.

1.     This was a preventable death.  This opinion is made based upon the officer's account of what transpired.  An assumption was made about Mr. Barnes being suspicious with no evidence of wrong doing prior to entering the home.

Defendants challenge this potion of the opinion to the extent that it is an opinion offered by

Dr. Carter upon the issues of proper use of force by police, and on the legal issues of reasonable

suspicion and probable cause.  In fact, a review of Dr. Carter's report, and particularly the second sentence of this portion of the opinion opining about "no evidence of wrong doing," reveals that Dr. Carter is commenting upon the propriety of police actions in this case both with respect to the initial questioning of Mr. Barnes, and also with respect to the attempts to detain and then arrest him. Plaintiffs concede, as Dr. Carter did during deposition testimony, that she has no expertise outside of forensic pathology—she is not offered to present testimony on the concepts of reasonable suspicion, probable cause, or the proper use of force by police officers.  Therefore, the entirety of the first paragraph of Dr. Carter's opinion is beyond her stated expertise to the extent that she is commenting upon the propriety of police actions in questioning and then attempting to detain and arrest Mr. Barnes.

Plaintiffs, however, also assert that the issue of whether the death was preventable is also a comment upon police actions in providing Mr. Barnes medical care.  More specifically, Dr. Carter asserts that police failed to notice that Mr. Barnes had begun convulsing during the struggle, and also that medical care was delayed for some unspecified period of time.  Defendants agree that Dr. Carter's opinion that "this was a preventable death" in the context of the medical care provided to Mr. Barnes is an opinion that Dr. Carter can properly give in this case, and that is not subject to being struck on a *Daubert* challenge.  Defendants assert, however, that they will again seek to have this opinion excluded through a motion in limine.

Therefore, as to the first numbered paragraph of opinions offered by Dr. Carter, the motion to exclude is GRANTED, with the exception of Dr. Carter's opinion that the death was preventable to the extent that Dr. Carter is referencing the medical care provided to Mr. Barnes as opposed to police conduct in questioning, detaining, and arresting Mr. Barnes.

6

2.      This death was due to excessive force by law enforcement officers.  While this reviewer is in agreement with the manner of death the cause of death listed is utter nonsense.  This man was not acting in a manner that suggested that he was a threat to himself or his neighbors when he was questioned by the officer initially.  The wastebasket term of schizophrenic psychotic delirium following physical restraint is ridiculous.  Mr. Barnes died after multiple applications of a Taser device, multiple impacts from blunt objects and physical ligature and restraints.

Again, defendants assert that the first sentence of this portion of the opinion will not assist the trier of fact because Dr. Carter admits she is not qualified to speak to the legal issue of excessive force.  Plaintiffs have agreed not to tender Dr. Carter as a witness with respect to the legal concept of excessive force.  Instead, plaintiffs assert that Dr. Carter should be permitted to "testify with respect to what contributed to the death of the decedent and her opinion whether the force was excessive in the context of the decedent's body (cause of death)."  Dkt. 112 at 2.  A review of Dr. Carter's report, however, does not reveal an opinion from Dr. Carter that the application of force was the cause of death as a *medical* opinion.  Instead, Dr. Carter agrees with the "manner of death" set forth in the autopsy report (i.e., cardiac arrest), but she then states that the *manner* of death in the autopsy report is "nonsense" for the sole reason that the decedent "was not acting in a way that suggested he was a threat."  Dkt. 108-1 at 3.  Therefore, Dr. Carter's opinion regarding the excessiveness of the force is not a medical finding at all, but is premised upon her view of the necessity of the use of force in this case, which is a legal opinion.  Again, Dr. Carter has not been offered as an expert on police procedures generally, or the use of force by police specifically.

Dr. Carter also states in the final sentence of this portion of her opinion that "Mr. Barnes died after multiple applications of a Taser device, multiple impacts from blunt objects and physical and ligature restraints."  Again, however, Dr. Carter does not assert that the force itself caused the death, nor does she identify any specific injury arising from the application of force that she believes caused

7

death in this case.  Indeed, Dr. Carter conceded at deposition that she had no expertise in the area

of the effect of a Taser, and further agreed that none of the injuries were themselves life-threatening.

Therefore, Dr. Carter's rejection of the medical examiner's asserted manner of death is not premised

upon a medical opinion or upon a dispute of medical fact.  Instead, it is premised upon her view that

the confrontation itself was unnecessary, and that is a legal issue that she is not qualified to address.

Plaintiffs have failed in their burden of establishing that Dr. Carter has offered an opinion in the

second paragraph that is within her stated expertise, and the motion to strike is GRANTED in this

respect.

> 3.      Mr. Barnes did not receive timely medical care.  After he was observed to
> have seizure activity the medical assistance was delayed while EMS responders
> tended to two officers with minor injuries.  Several minutes elapsed while the officers
> were treated with missed opportunity to provide circulatory support to Mr. Barnes.
> To make matters worse, Mr. Barnes had documented signs of cardio-respiratory
> failure and was still in handcuffs while being administered oxygen and chest
> compressions.

Defendants, in accordance with their stance on Dr. Carter's opinion that "this was a

preventable death," have agreed that this portion of her opinion is not subject to a *Daubert* challenge,

but will instead be addressed in a motion in limine.  Therefore, the motion is DENIED as to

paragraph 3 of Dr. Carter's opinions.

> 4.      The law enforcement agency should not have had access to Mr. Barnes body
> after his death was pronounced.  There should have been no examination conducted
> of his body which includes photographs without the presence of the medical
> examiner staff.

Dr. Carter is qualified to opine about proper protocol and procedure where a death occurs

following an altercation with police.  The court agrees with plaintiffs that this is a question of

relevance rather than a question of Dr. Carter's ability to offer an opinion.  The motion is DENIED

in this respect without prejudice to defendants' right to challenge the admissibility of this opinion on other grounds.

> 5.      There are cultural differences that must be considered in deaths like this one. Minority men have been over represented in the category of policy custody deaths by comparison to the population statistics.  Black men by proportion are killed more often in police custody cases than white men.  The theory of self preservation and flight or fight must also be taken into consideration.  A person perceiving death may display or appear to exhibit extraordinary strength without being proclaimed to have a psychotic event.  This reviewer suggests that an experienced psychiatrist review this case report.

Dr. Carter does not offer herself as an expert on sociology, psychology, or psychiatry. Indeed, the final sentence of this paragraph indicates that she is suggesting questions upon which another expert might offer opinions (and upon which Dr. Bailey has offered opinions, which are addressed below).  Therefore, the motion to strike is GRANTED as to this portion of Dr. Carter's opinions as being beyond her area of expertise.

*3. Dr. Rahn Bailey*

Dr. Bailey is a board-certified psychiatrist, and a board-certified forensic psychiatrist, and defendants concede he is an expert in forensic psychiatry.  Dr. Bailey was asked to comment upon three things:  (1) the effect of mental illness on decedent's death and whether it was a contributing cause; (2) the relationship of race and African Americans, law enforcement, history, and the psychology of fear; and (3) to determine if a mentally ill person is "less prone to emotional distress and damages because of an underlying mental illness."  Dkt. 108-4 at 1 (Tab D, Ex. 1 at 1).  Dr. Bailey concludes his report as follows:

> Therefore, in my professional opinion, based on reasonable medical certainty, [decedent] had an extensive history of having Schizophrenia, Parnoid type.  His mental illness was not the primary cause of his death and injuries.  Mr. Barnes was tasered more than 30 times which was a major cause of death.

Dkt. 108-4 at 7 (Tab D, Ex. 4 at 7).[1]  During Dr. Bailey's deposition, counsel agreed to strike the final sentence, and to strike all references in the body of the report to the effect that a TASER may have had on Mr. Barnes.  Dkt. 112 at 7.  Counsel for plaintiffs confirmed this at the hearing on the motion to exclude.

Dr. Bailey also offered several comments during the "formulation" portion of his report that are objected to by defendants on the basis that they are beyond his area of expertise:

> [Police] entered the home of Mr. Barnes without warrant, or cause.  For not being cooperative, he was beaten multiple times.

> The circumstances surrounding Mr. Barnes pursuit and assailment seemed excessive.

> The use of force or the magnitude applied to someone who is fleeing is considered excessive.  It alludes to potential police bias and brutality being at play.

> The EMS was kept from Mr. Barnes who had never put up a fight except to defend his person.

> Mr. Barnes was clearly beaten seriously.

Dkt. 108-4 at 5-7.  Defendants object that Dr. Bailey is not an expert on the use of force by police, or in the constitutional standards for use of force.  Indeed, much like Dr. Carter, Dr. Bailey has offered his view of the necessity for, and constitutionality of, the actions taken by police in this case

---

[1]  Dr. Bailey offered two reports.  In the first report, his conclusion differed slightly:

> Therefore, in my profession opinion, based on reasonable medical certainty, Mr. Herman Barnes a.k.a. Carroll had an extensive history of having Schizophrenia, Paranoid type.  His mental illness impaired his ability to make a decision, thereby impeding him from complying with instructions given him by the deputies of the sheriff's department.

Dkt. 55-1 at 6.  This conclusion is not relevant to the pending motion, however, because plaintiffs have offered Dr. Bailey's second report as a complete replacement of his first report.

even though he is not offered as an expert in any field that would make him competent to render such opinions.  The motion to strike is GRANTED with respect to any opinions offered by Dr. Bailey concerning the excessiveness or necessity of any actions taken by defendants as law enforcement officers.

Defendants also object to Dr. Bailey commenting upon the possibility that Mr. Barnes may have retreated from officers not as a means of evasion or from consciousness of guilt, but that he was "placed in an uncomfortable position or different environment, and thus reacted inconsistently due to the presence of fear."  Dkt. 108-4 at 6.  In his report, Dr. Bailey ties this possible inconsistent reaction to Mr. Barnes's paranoid schizophrenia, which includes "associated features" such as "anxiety, anger, aloofness, and argumentativeness."  *Id.*  Defendants assert that the reason for Barnes's reaction to police is irrelevant to the legal questions the jury will be asked to answer concerning the officers' basis for the actions they took.  The court disagrees.  Whether or not Mr. Barnes reacted as he did to police from irrational fear arising from his mental impairment, as opposed to an actual intent to behave suspiciously and to later resist police, is a relevant inquiry in this case.  The jury is entitled to hear evidence that Mr. Barnes was not intentionally being noncompliant with police directives.  Defendants are correct, however, that the officers are not alleged to have had knowledge of Barnes's mental illness, and thus could not have been aware of the true reasons for his actions.  However, this distinction can be made to the jury, and any undo prejudice can be remedied by an appropriate instruction.  Dr. Bailey is qualified to offer an opinion on the possibility that a mental impairment caused Mr. Barnes to act as he is reported to have acted, and the motion to strike is therefore DENIED in this respect.

Dr. Bailey also, however, seeks to offer an opinion concerning race and a "psychology of fear." The court can find no mention in Dr. Bailey's report of any basis for him to offer an opinion that Barnes acted out of fear of the police. Dkt. 108-4. Thus, plaintiffs have failed to carry their burden of establishing that Dr. Bailey has offered an admissible opinion on race and the "psychology of fear" in this case and the motion to strike is GRANTED in this respect.

A more difficult question is posed with respect to Dr. Bailey's opinion that "paranoid schizophrenia is not the cause of death" in this case. Dkt. 108-4 at 7. This opinion is offered, it appears, in response to the medical examiner's conclusion that death was the result of "sudden death during schizophrenic psychotic delirium following physical restraint" or "an exacerbation of psychosis during physical restraint." Dr. Bailey concedes that this is "a possible" cause of death and that Mr. Barnes was "at a possible risk" for excited delirium syndrome due to his "significant psychotic history." Dkt. 108-4 at 7. Dr. Bailey then immediately states, however, that "tasering for multiple times or for prolonged periods of time can [also] lead to cardiac arrest." *Id.* Thus, Dr. Bailey's report ties his rejection of excited delirium syndrome, and his opinion that paranoid schizophrenia is not the cause of death in this case, specifically to his belief that repeated use of a TASER can cause cardiac arrest. Plaintiffs have conceded that Dr. Bailey is not able to offer an expert opinion on the effects of a TASER. Accordingly, although Dr. Bailey possesses qualifications that would appear to qualify him to offer an opinion on the possible contribution paranoid schizophrenia might have on a person's death, Dr. Bailey has not offered in his expert report any basis for rejecting the medical examiner's conclusion other than the possibility that repeated use of a TASER caused death. The court finds, therefore, that plaintiffs have not met their burden of

establishing that Dr. Bailey has offered an admissible opinion on the cause of death in this case, and the motion to exclude is GRANTED in this respect.

CONCLUSION

After consideration of defendants' motion to exclude the testimony of plaintiffs' experts Dr. Joye Carter and Dr. Rahn Bailey, the parties' briefing and arguments, the appropriate evidence, and the applicable law, the motion (Dkt. 108) is GRANTED IN PART AND DENIED IN PART as set forth in more detail above.

It is so ORDERED.

Signed at Houston, Texas on November 3, 2011.

_____
Gray H. Miller
United States District Judge